(84 Misc. Rep. 9)

### In re MAYER.

(Surrogate's Court, New York County. January 27, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 20*)—APPLICATION FOR LETTERS—PROCEEDING.

Where, in a contentious probate proceeding, the testamentary instrument is disputed and has been adjudicated by decree, an application for letters testamentary is an independent proceeding following the decree of probate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 83–105; Dec. Dig. § 20.*]

2. EXECUTORS AND ADMINISTRATORS (§ 20*)—LETTERS TESTAMENTARY—ISSUANCE—JURISDICTION.

The general grant of jurisdiction to issue letters testamentary, conferred by Code Civ. Proc. § 2472, necessarily carries with it the power to determine the better title to letters, and the power to construe the wills probated in the jurisdiction of the application, if such construction is necessary to determine the better title to letters.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 83–105; Dec. Dig. § 20.*]

3. EXECUTORS AND ADMINISTRATORS (§ 517*)—PROPERTY IN DIFFERENT COUNTRIES—SEPARATE WILLS.

A person, dying seised or possessed of property in different countries, may make separate wills, each referring to testator's property in the particular country, and he may appoint separate sets of executors, whose office will be confined to the administration of the property in the country in which they are appointed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1, 2297, 2298; Dec. Dig. § 517.*]

4. WILLS (§ 243*)—FOREIGN WILLS—PROBATE—JURISDICTION.

Where a testator, having property in separate countries, makes separate wills disposing of the same, the courts of the country of testator's domicile have no jurisdiction to probate the foreign will, unless such will is dependent in some way on the domestic will; nor has the foreign court

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jurisdiction to probate the will of testator's domicile, unless it relates to or depends on the foreign will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 573–576; Dec. Dig. § 243.*]

5. EXECUTORS AND ADMINISTRATORS (§ 12*)—PROBATE COURTS—JURISDICTION.

In general, the jurisdiction of a probate court of a particular country in matters testamentary depends primarily on there being property of the deceased situated within the country.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 24; Dec. Dig. § 12.*]

6. EXECUTORS AND ADMINISTRATORS (§ 517*)—PLURAL WILLS—PROPERTY IN DIFFERENT COUNTRIES—EXECUTORS—NOMINATION—REVOCATION.

Testator, a resident of France, but having a large personal estate in New York, executed an American will which, after providing for the payment of certain legacies, directed his executors to divide the residue into four equal parts, and to convey one part to each of four designated charities, appointing three individuals who were residents of New York as his executors. Thereafter he executed a will in France appointing an executor with the right to collect alone all sums and claims which testator might have at his death, with bankers in Paris, to carry out the dispositions he was about to make, and then followed certain specific bequests of property in France having direction that his household effects should be sold and the proceeds delivered to the Grand Rabbi of Paris to be distributed to eleemosynary institutions, declaring that he maintained all other dispositions which he had made by another will. *Held* that, both of such wills having been probated in New York as dependent, the French will did not constitute a revocation of the nomination of executors in the American will, and they were entitled over the French executor to appointment to administer the American estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1, 2297, 2298; Dec. Dig. § 517.*]

Judicial settlement of the estate of Constant Mayer, deceased. Application for the issuance of letters testamentary under decedent's American will, opposed by the executor named in decedent's French will who applied for ancillary letters. Letters granted to the executors named in the American will.

See, also, 144 N. Y. Supp. 438.

Walter E. Meyer, of New York City (Harry W. Mack, of New York City, of counsel), for Monsieur Jacques Henri Dreyfuss.

M. S. & I. S. Isaacs, of New York City (Lewis M. Isaacs, of New York City, of counsel), for Brunner.

Maurice Leon, of New York City, for Gottheil, as executor.

Corbitt & Stern, of New York City, for Frederick Gotthold, as executor.

Wolf & Kohn, of New York City, for Home for Aged and Infirm Hebrews, legatee.

Hoadly, Lauterbach & Johnson, of New York City, for Mt. Sinai Hospital and Hebrew Orphan Asylum, legatees.

FOWLER, S. This is a proceeding for letters testamentary and also for ancillary letters. In the former proceeding for probate of several testamentary papers made in his lifetime by the deceased, Mr.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Constant Mayer (144 N. Y. Supp. 438), and now. established and approved by a former decree of this court, it was intimated by the surrogate that the application for letters testamentary should be reserved until after the contentious proceeding for probate was finally decided in this court. It was also stated in the opinion (144 N. Y. Supp. 438) that, in a proceeding where title to probate was in controversy, it was premature to move for letters, before the script entitled to probate was first adjudicated, and that in such a condition of the probate business the application for letters testamentary had become a separate proceeding. I shall now justify that ruling by the citation of authority.

Prior to the Revised Statutes it will be remembered that the probation and approbation of testaments, commonly called the "probate," in the courts of the surrogates of New York, conformed to the practice in the Ecclesiastical Courts known to the common law. Only in contested matters did the surrogate pronounce the judgment, then called a "definitive sentence," which was followed by a decree, and not then unless an appeal was pursued. Sir Thomas Tomlins briefly indicates the common practice by the common testamentary law:

"The probate of wills * * * is done by granting letters testamentary to the executor under the seal of the court."

This is confirmed by Toller on Executors (page 587):

"When the will is proved the original is deposited in the registry of the ordinary or metropolitan, and a copy thereof in parchment is made out under his seal and delivered to the executor, together with a certificate of its having been proved before him, and such copy and certificate are usually styled the probate."

The former practice on probate is laid down in many books of authority. 4 Burns Ecc. Law, 315, 316; Godolphin, Orphans Leg. 62; Swinburne on Wills, p. 6, § 14; 11 Viner's Abridgment, 56; Bacon's Use of the Law, 67. It was only in contentious probates, and after the allegations and proofs taken, that a definitive sentence by the court became necessary to the record on an appeal from the surrogate to the ordinary. Mortimer on Probate, 276. It may be observed that appeals in the civil law courts were always taken in ways not very dissimilar to our present practice.

The former probate practice in New York was substantially the same as at common law. Surrogate Kirtland, of this state, before the Revised Statutes of 1830 indicated the common practice in this state.

"The meaning of probate of a will," he says, "is generally understood to be the proving of the will, making a copy of the same, indorsing the proof on the copy, and granting letters testamentary under the seal of the surrogate and annexed to the copy of the will. Kirtland's Pr. 44."

This is confirmed by Judge Dayton in his most admirable work on the practice of this court (page 212), a work, it may be remarked, which is one of the few classics among local law books, and one still much used, as I am authoritatively informed, in the highest court of this state in appeals of difficulty.

[1] After the Revised Statutes, an application for letters in a contested probate became a separate proceeding in New York. Judge Dayton, in substance, states that after the Revised Statutes the issu-

ance of letters testamentary became distinct from the proceeding to probate. 2 R. S. 69; Dayton on Surrogates, 212. This remains measurably true in more modern practice. Section 2636, C. C. P. But although the application for letters is become a separate proceeding ex necessitate rei in a contested probate only, yet no further citation need issue on such application because of the exception specified in section 2516, C. C. P. It may be noticed in passing that the modern probate practice of England has developed to the same point from like inherent jural necessities. In the Goods of Tucker, 3 S. & T. 585, 586. So much in justification of my prior opinion that the application for letters testamentary in a probate cause of this character is a separate proceeding or a separate "matter of business," for in courts of this character such secondary applications were formerly styled with greater propriety matters of business rather than causes.

. [2] I now come to the next point in this proceeding: There are here two testaments, each specifying a different executor. Has the surrogate an inherent jurisdiction to look into the wills already admitted to probate and construe them in order to determine the better title to the office of an executor? On this point I am not in doubt. The general grant of jurisdiction to issue letters testamentary (section 2472, C. C. P.) necessarily carries with it the power to determine the better title to letters and the power to construe the wills probated in this jurisdiction if such construction is necessary to determine the better title to letters testamentary. This power inheres in the general grant of jurisdiction to issue letters testamentary. When the surrogate is required to do an act, the legal requirement carries with it all the powers necessary to the fulfillment and execution of the act. It is unnecessary to discuss so plain a proposition.

This brings me to the gist of the matter now before me: The main facts regarding the situation of the wills are fairly indicated in my former opinion in the proceeding for probate. 144 N. Y. Supp. 438. The so-called American will and also the so-called French testament, having both been probated in this jurisdiction, application is now made by the three executors named in the American will for the issuance to them of letters testamentary. An application is also made on behalf of the French administrator, Monsieur Desbleumortiers, for the issuance to him of ancillary letters of administration. As it is contended by the latter that the appointment of the executors in the American will was revoked by the French will, that question will now be considered.

The petition of M. Desbleumortiers alleges that he is a resident of Paris and that on the 11th day of July, 1911, letters of administration were duly issued to him upon the estate of the late Mr. Constant Mayer, who died a resident of Paris, by a court of competent jurisdiction, and that an order to that effect was made by said court authorizing and directing M. Desbleumortiers to take possession of the property of decedent within the United States as well as in France. The petition also avers that Mr. Mayer had not been in, nor resided within, the state of New York for more than 12 years preceding his death, and on information and belief that there are no creditors in this state; that the so-called "French will" was, on May 13, 1911, ordered by a

court of competent jurisdiction to be deposited among the minutes of a notary of Paris, and was recorded in the office of said notary and still remains in said office. The petition further alleges that neither of said instruments specially appoints any person as executor with respect to personal property situated within the state of New York. The claim of the administrator appointed at the domicile to letters is based upon the provisions of section 2696, C. C. P.

Such parts of the "American will" admitted to probate as are necessary to the determination of the question at issue are as follows:

"This is my last will and testament; it annuls and renders void all former wills and testaments which I may heretofore have made.

"I give and bequeath to my cousin Gertrude, the wife of Dr. Henry Levy, residing at No. 1030 Grace street, in the city of Richmond, Va., the sum of six thousand dollars ($6,000).

"I give and bequeath to my cousin Emma, the wife of Mr. Arnold W. Brunner, architect, residing at No. 1748 Broadway, in the city of New York, the sum of four thousand dollars ($4,000).

"I direct my executors to divide the rest, residue and remainder of my estate in four equal parts, and I give and bequeath one of such parts:

"1. To the Mt. Sinai Hospital in New York.

"2. To the Hebrew Orphan Asylum in New York.

"3. To the Home for Aged and Infirm Hebrews in New York.

"4. To the Young Women Hebrew Association in New York.

"I appoint Mr. Fred Gotthold, 165 West Fifty-Eighth street, in the city of New York; Mr. Arnold W. Brunner, architect, 1748 Broadway, in the city of New York, and Prof. Richard Gottheil, of the Columbia University, in the city of New York, as the executors of this my last will and testament, and I request that they should not be called upon to give security for its faithful execution.

"In witness whereof I have hereunto set my hand and seal, this fifteenth day of July, 1908."

The pertinent portions of the "French will," also admitted to probate, are as follows:

"I appoint Mr. Eugene Cuisenier my testamentary executor, with right of possession ('avec saisine') and power to collect alone, upon his mere receipt, all sums and claims which I may have at my death, notably all sums on deposit with Messrs. Morgan, Harjes & Company, bankers at Paris, for the purpose of carrying out the dispository provisions (dispositions) that I am about to make.

"The sum of one thousand francs in two bank notes of five hundred francs will be found in an envelope in the drawer of the little desk which is in the parlor; this sum is intended to pay for my funeral expenses. * * *"

Then follow some bequests of money and of specified articles of personal property.

"I desire that all my household effects other than the articles of which I have already disposed be sent to the official auction rooms, and that the proceeds thereof be added to the sum which shall remain belonging to my estate, and that the whole be delivered to the Grand Rabbi of Paris, to be distributed by his care to eleemosynary institutions and to unfortunates, preferably to the aged and to widows. * * *

"I maintain all the other dispository provisions (dispositions) which I may have made by another will.

"Executed at Paris at my domicile, 2 Avenue Elisées Reclus, on the first day of February, one thousand nine hundred and eleven."

Mr. Mayer, the testator, died May 11, 1911. His "French will" was executed on February 1, 1911. He then had 11,905 francs in

France and other personal property, and $80,000 in this state, which composed the whole of his estate. By the "French will" he disposed of 4,900 francs for the payment of his funeral expenses and certain money legacies, and gave certain specific articles, including part of the household effects, to certain designated legatees, and the proceeds of the sale of the rest of his household effects, directed by him, together with the "sum which shall remain belonging to my estate," he gave to the Grand Rabbi of Paris for the purposes mentioned. Most of the articles specified were located in France; but whether the others were located there or elsewhere does not appear. These, however, were of such a character that it might fairly be presumed that they also were located in France, which was the domicile and place of residence of testator and where he maintained his household. The French will, while giving no power over any of the property disposed of by the American will, by its reference to the dispositive provisions in the latter did in a sense make the "American will" a part of the "French will" and the latter a part of the American will for the purpose of their probate in order to effectually carry out here testator's testamentary purpose. Besides, the probate of both wills was necessary in order to enable the parties to litigate their respective claims in regard to their rights and powers under the "American will," and as a consequence in regard to the property here affected by it or by the French will. As I stated on the probate, in order to entitle a Frenchman's will of his French property to probate in this jurisdiction, some such interdependence between his American will and his French will must be made out (144 N. Y. Supp. 439); otherwise this court would not have jurisdiction to probate the French will, disposing of French property only.

[3, 4] Before proceeding to consider the matter at issue, let me say that the word "dispository" in my former decree was used in the sense of dispositive. See Murray's New English Dict., vol. 3, pt. 1, p. 494. I will now refer to some principles of law relevant to the case. In these days of extended international intercourse and investments, it has become very common for a person dying seised or possessed of property in different countries to make separate wills, each having more or less exclusive reference to the testator's property in a particular country. In that event the courts of the country of the testator's domicile have no jurisdiction to probate the foreign will unless such foreign will is dependent in some way on the domestic will. Nor has the foreign court jurisdiction to probate the will of the testator's domicile unless such will is related to or depends on the foreign will. Jauncey v. Sealey (A. D. 1686) 1 Vernon, 397; In the Goods of Coode (1867) 1 P. & D. 449; Attorney General v. Dimond (1831) 1 Cr. & J. 356; Matter of Mayer, 144 N. Y. Supp. 439. The case cited from Vernon in the year 1686 is binding here.

It is also established by law that separate sets of executors may be appointed for the different countries in which a testator may have property. Cf. Mortimer, Probate Law, 13; Dicey, Conf. Laws, 658; Attorney General v. Dimond, 1 Cr. & J. at page 359. In such event the foreign executors will not be entitled to administer here, nor our ex-

ecutors entitled to act abroad. In the Goods of Pulman (1863) 33 L. J. P. 20; In the Goods of Wallich (1864) Id. 87; Velho v. Leite (1864) 3 Sw. & Tr. 456. The late Dowager Duchess of Manchester's will, proved before me (In re Hollins, 79 Misc. Rep. 200, 139 N. Y. Supp. 713), was an example of this character of testamentary disposition; there being "American executors" and "English executors" designated by her separate wills.

[5] As a rule the jurisdiction of the probate court of a particular country in matters testatmentary depends primarily on there being property of the deceased situate within the country. Dicey, Conflict of Laws, 313; Mortimer on Probate, 13. When there is, for instance, a will of a foreigner executed at his domicile having reference solely to his property in this country, there is no rule of law which prevents the testator from nominating executors residing here whose office shall have exclusive reference to testator's property in this country. Despard v. Churchill, 53 N. Y. 192; Hartnett et al. v. Wandell, 60 N. Y. at page 351, 19 Am. Rep. 194; Dicey, Conf. Laws, rule 181, p. 658; and cases cited before in the course of this opinion.

[6] I feel compelled to advert to a circumstance having no legal relation, but concerned with the justice of my conclusion. It would, perhaps, seem that the appointment of an executor in the French testament must necessarily have had reference to the law of New York, as it is sometimes assumed by our lawyers that, in countries where the modern Roman Law prevails or is a criterion, there is no such office as that of an executor of a testament. There is no proof now before me of the present French law on that point. I cannot assume, therefore, in this cause, that the office of an executor is either known or unknown in France. Although the point is not placed in the cause, I notice for my own satisfaction that while the office of executor was not named in the Justinian legislation, now known as the Corpus Juris Civilis, that subsequently to the reign of Justinian, a Constitution of the Emperor, Manuel Commenus (Constitutiones Imperatoriæ, p. 527) entitled "de executoribus testamentorum," provided for "executors" who should oversee the fulfillment of certain legacies, not, however, displacing the heir—a necessity of a Roman will—but, as it were, superintending the execution of legacies and trusts. I was not therefore surprised to find that article 1025 of the Code Napoléon provided expressly for executors: "Le testateur pourra nommer un ou plusieurs exécuteurs testamentaires." The President de la Cour de Cassation, M. Troplong, moreover furnishes a commentary on this article in which he states in substance that the French law, which owes so much to Roman Law in all that concerns testaments, preserves, in accordance with ancestral customs, the office of executors in order to assure with more force and stability the will of the testator. Troplong, Commentaires, etc., IV, 172. Thus it is apparent to me that no injustice is done in this case by assuming, as I must from the evidence before me, that the naming of an executor in the French testament did not necessarily refer exclusively to the law of New York. I should have been sorry to reach a wrong conclusion on the point, although based on a necessary presumption of law.

But ignoring wholly this last consideration, as I do, it seems clear from the provisions of the French will of Mr. Mayer that the testator intended to confine the powers of the person selected to have possession and collect all sums and claims which he had at his death in France to the collection of moneys in France for the payment of money legacies given by his French will, and not to make collections elsewhere. The money in France was abundantly sufficient to discharge the general legacies of specified amounts and leave a balance for the residuary legatee. In no view does the French will evidence an intent or attempt to appoint an executor of the American will or to confer powers or impose duties which could constitute any one such, or which are incompatible with the exercise of the usual executorial functions under the American will by the executors named therein for the purposes therein specified. The provision contained in the French will in regard to maintaining all the other dispositive provisions in another will evidently referred to the American will simply, and solely relates to its dispositive provisions. When it is considered that the great bulk of testator's property is located here and but a relatively extremely small part thereof is in France, and that the part here is wholly disposed of by the American will, it would be very unreasonable to imply or suppose from the provisions in the French will that the testator intended to displace the American executors and as a result to have an ancillary administrator necessarily resting his right to appointment as such upon the French will, or instead thereof a domestic administrator cum testamento annexo. Besides, apart from the mere appointment by the American will of executors, it, in the very provisions disposing of the residuary estate and as a part of such provisions, imposed a mandatory direction upon the American executors for the division thereof in the manner designated.

The application for ancillary letters must be denied, and letters testamentary will issue to the executors named in the American will, which has been admitted to probate. Settle decree accordingly.