Matter of Proving the Last Will and Testament of Andrew F. Kennedy, also Known as A. F. Kennedy, Deceased, as a Will of Real and Personal Property.

(Surrogate's Court, New York County, February, 1919.)

Surrogate's Court — when decree of probate properly directs that letters issue — executors and administrators — trial — wills — when motion to amend decree denied — Code Civ. Pro. § 2566.

> Under section 2566 of the Code of Civil Procedure it is only when written objections to the issuance of letters testamentary are filed, and the real trial is on that question, that a decree of probate should not direct the letters to issue.
>
> Where the surrogate of New York county in conformity with the practice prevailing in that jurisdiction for nearly three hundred years, upon entering a decree in a contested probate proceeding, inserts a direction for the issuance of letters testamentary to the nominated executors, a motion to amend the decree by striking therefrom such direction, will be denied.

Motion to amend a decree in a contested probate proceeding.

Cadwalader, Wickersham & Taft (Henry W. Taft, of counsel), for proponents.

Felix A. Muldoon (Joseph S. Auerbach and Charles H. Tuttle, of counsel), for contestants.

FOWLER, S.   This is a motion to amend a decree in a contested probate proceeding by striking therefrom the grant of letters testamentary to the executors of the will probated.   The proceeding was conducted by the surrogate with the aid of a jury in conformity with the late statute in such cases made and provided.   Pursuant to a late decision of the Court of Appeals on an appeal from the Second Department, the surrogate was constrained to direct the jury to find the facts embraced in the special issues framed for the jury, as he was convinced that a verdict against the will would be against the weight of evidence.   .This direction conformed to the practice in other probate jurisdictions where juries are employed to assist in the inquisition. *Herster* v. *Herster,* 122 Penn. St. 239; *Matter of Hoyt's Estate,* 10 Kulp (Penn.), 166; *Matter of Hemingway's Estate,* 7 North County Reporter, Penn. 93; *Rowson's Estate,* 175 Penn. St. 150; *Sharpless' Estate,* 134 id. 250; Borland Wills; § 88, and cases there cited.

Although a jury is employed in a proceeding for probate, the probate judge alone can make a decree of probate, the jury not yet being substituted for the probate judges in probate proceedings, and in framing the decree, in this matter, the surrogate inserted a direction for the issuance of letters testamentary in conformity with the practice prevailing in this jurisdiction for nearly three hundred years, with the single exception of the years 1830 to 1837, when the Revised Statutes temporarily directed a different practice.   In 1837 the provision of the Revised Statutes was repealed and the old practice restored.

Formerly, and at common law, there was no such thing as "letters testamentary."   The probate and the executor's authority consisted in a copy of the will made out under seal, and delivered to the executor,

Surrogate's Court, New York County, February, 1919.   [Vol. 106.

together with a certificate of its having been proved, and such copy and certificate were called in the alternative " the probate or letters." 1 Williams Exrs. (2d London ed.) 172, 235; 4 Burns Ecc. Law, 315; Browne Ecc. Law, 308; Walker Exrs. 97, note 1; Rumsey Probate, 4. From the similarity of situation of Ireland and the American colonies in respect of the reception of the English law, Irish procedure and cases are of great authority here. In Miller's Irish Probate Practice, page 9, the old practice is well stated as follows: " The probate or administration is the sole document of title."

Under the former practice, when two or more executors proved the will, there was what is called " double " or " triple," and so on, probate, so that each executor might have an authenticated copy as proof of his authority. Dixon Probate, 244. But even under the old practice, when probate was contested, there was a formal decree entered, which, however, both approved the will and qualified the executors. Harrison Probate, 57; Rumsey Probate, 4.

The practice of issuing so-called " letters testamentary " in addition to a decree of probate is anomalous and local; it is no part of the common law applicable in probate courts. Mr. Redfield very properly says: " The term probate and letters testamentary are used as convertible terms." Redf. Sur. (5th ed.) 252, and see Willard Exrs. 160. The very learned Mr. Redfield attributes to statute the fact that distinctions between probate and letters have of late arisen. There can be no doubt that modern statutes contemplate letters testamentary as distinct from decrees of probate. Code Civ. Pro. §§ 2538, 2660. I so held in *Matter of Mayer,* 144 N. Y. Supp. 438; *Matter of Mayer,* 84 Misc. Rep. 9. But in that case the entire conflict was over the right to letters. There

is nothing in the modern statutes which commands that a direction for the issuance of letters shall not be inserted in a decree of probate, and in ordinary cases the practice so to insert it has been uniform since the year 1837.

Dayton on Surrogates (3d ed. p. 212) makes some explanation of the origin of the practice of issuing to executors separate letters. It is highly probable, in my judgment, that in issuing such letters testamentary separately and apart from the decree, and in addition thereto, the old local authorities acted on the *quondam* letters *ad colligenda,* which in certain instances were issued by the probate courts prior to the reign of Elizabeth. It is, however, unnecessary to trace the history of letters *ad colligenda* in detail.

It is difficult to fix the time when " letters testamentary," so called, first came into use in America, or the reasons therefor. The first record of letters testamentary in the registry of this court is in the year 1832, or subsequent to the Revised Statutes. 2 R. S. 69, § 1; 2 id. 80, § 54. An examination of the form of letters, first used in this jurisdiction and since copied elsewhere, shows that the letters are a mere epitome of the decree of probate. The letters now in use are in the same form as that first employed in 1832, or subsequent to the Revised Statutes. The reason for such additional authority as letters to executors probably was that testators in America generally had property in different jurisdictions, and such letters were a great convenience to them. It is, however, well known and frequently decided in this state that the executor's authority proceeds from the will and not from the letters testamentary. *Matter of Ripley,* 101 Misc. Rep. 468.

I have now stated in substance that letters always

Surrogate's Court, New York County, February, 1919.   [Vol. 106.

were directed to be issued in decrees of probate.  This being so, my insertion of a direction for the issuance of such letters in the decree of probate conformed with the former practice in every respect.  It it only when written objections to the issuance of letters testamentary are filed that a decree of probate should not direct letters to issue.  Code Civ. Pro. § 2566.  Then the real trial is on the issuance of the letters.  Without such written objections the statute does not contemplate that the issuance of letters shall be stayed.

The decision in the *Leland* case is cited in support of the motion to amend the decree (175 App. Div. 58), and as an authority for the proposition that the issuance of letters should not have been inserted in the decree.  I do not so read that case.  Let us examine the case fully:

The decision in the *Leland* case in 1916 presented but one question, whether the provision of the Revised Statutes has changed the former rule of law that a probate court could not refuse letters testamentary to a person nominated by a will if he were *compos mentis*. At common law, if an executor had intelligence enough to assent to his appointment, the probate jurisdiction could inquire no farther, and was bound to grant " letters."  Salk. 299, 303.  If the executor subsequently proved incompetent for any reason, there was ultimately found a remedy in equity.  In the absence of any controlling authority in this state, the surrogate held that the Revised Statutes did not intend to change this feature of the common law, but intended to codify it — the Revised Statutes being for a large part a codification.  The surrogate, in reaching this conclusion as to the true construction, was of the opinion that it was contrary to public policy that the surrogate's jurisdiction to refuse letters testamentary for

intellectual deficiencies of executors should be so enlarged. He recognized it would promote receiverships of estates on new grounds. In the *Leland* case the testator had designated his friend, a distinguished scientist and man of high character and standing, as his executor. The estate was large and the fees coming to the executor many thousands of dollars. Shortly before probate of the will the executor named in the will had suffered an apoplectic stroke. The surrogate, nevertheless, granted him letters. 96 Misc. Rep. 419. The courts of review, however, could not see their way clear to affirm the surrogate's construction of the statute. 175 App. Div. 62; 219 N. Y. 387. I felt some regret, as a surrogate of this great jurisdiction, that this ultimate decision could not have been in conformity with the old law of wills, as I feared that it might lead to an augmentation of the surrogates' jurisdiction in ways which would ultimately prove detrimental to the law of wills, as well as to the property interest and to the estates of dead people in the constructive care of the courts of this state. The sequel showed that the surrogate, in resting his decision on old principle, acted not altogether without justification. The executor of Leland, on inquiry, is still alive, in good health and fully competent for the discharge of his executorial functions. But by the final construction of the courts of this state he was deprived of his executorship and sustained a very heavy pecuniary loss of the fees which the testator had intended to bequeath him. But whatever the ultimate effect of the decision in the *Leland* case on the probate law of this state, whether favorable or unfavorable, the decision itself has no application here. That was a matter in which written objections to the issuance of letters were duly filed, and the whole issue

was as to the right to letters. That is not this case at all.

That the decree of probate in this matter should contain an order for the issuance of letters, I made no doubt on the trial. Strange receivers, in will cases, are very obnoxious to the inhabitants of this state. I know of nothing more so — and when decrees of probate are made after due deliberation and a long trial, the surrogate ought not to presume that his decree is in error, and continue the receivers in office on that theory. He should, on the contrary, provide that the receivers go out as quickly as possible, or at least that they give place to the nominated executors in the will formally approved.

The motion to amend the decree will be and is denied.

Motion denied.