Matter of the Estate of Theodore P. Shonts, Deceased.

(Surrogate's Court, New York County, November, 1919.)

**Wills — production of — contested probate of — power of surrogate to revoke designation of temporary administratrix mistakenly made — trial — executors and administrators,**

Where, after the designation of the wife of a testator as temporary administratrix, his will is produced, the surrogate having inherent power must of his own motion revoke such designation mistakenly made in the course of procedure.

Pending the trial of the contested probate of the will the surrogate, on an application for the appointment of temporary administrators, may ascertain who are the executors named in the will for the purpose of taking cognizance of their persons but he cannot at that time pass on the legality of particular provisions of the will.

The appointment as temporary administrators of persons named in a will as the executors is not only more economical for suitors and the great majority of estates, but is more consonant with the dignity of the court and the intrusion of its nominees, strangers to the dead, should be as rare as possible.

Where two of the individuals named as executors renounce and no good and sufficient reason is shown why, pending the contested probate proceeding, the other executor, a trust company in good standing, should not be named as temporary administrator, an order to that effect may be entered in the interest of all concerned.

Proceeding upon the probate of a will.

Cornelius J. Sullivan, for executors.

Warren Dixon and George W. Files, for respondent.

FOWLER, S.  This matter comes on for hearing on an order to show cause (1) why my order designating Mrs. Shonts as temporary administratrix should not be annulled, and (2) why temporary administration pending the contest in the proceeding to probate the will of the late Theodore Shonts should not be granted to the executors named in said will.  It appears that an order granting temporary letters of administration was made by me to the widow in a course of administration, and on the judicial proof and assumption that there was no will.  No letters to Mrs. Shonts have been issued, and nothing further has been done in the proceeding based on an alleged intestacy.  Since then an executed will in writing appears, and is placed on file, with a petition for its probate.  This tremendous fact in law alters the situation when Mrs. Shonts was first named receiver in a course of administration.  When a will is produced in this court, with a petition for its probate, the jurisdictional requisite for an administration proceeding ceases *ipso facto*.  There can be no presumption by the surrogate that the will so produced is at this stage invalid.  The mere production of a formal will in courts of this character is and always has been a fact of great legal consequence, even before probate. It absolutely precludes the issuance of letters in a course of administration on the ground of intestacy.   In England, with its similar laws, the mere suggestion of a will, without other proof, defeats a grant of any administration for intestacy.

It is certainly anomalous to proceed in a course of administration after a will is produced.  *Matter of Mayer*, 84 Misc. Rep. 10.  Much of the probate law of

this country was formulated before the dominant and institution-making element of our population migrated here. This great law they brought with them, and it alone, in the judgment of many, has enabled our political institutions and constitutions to operate with success in our national domain. Had it not been for the common law, national development would have pursued other lines less successful.

In modern times in this state it is, as I fear, too much the habit to assume, counter to that common law, that the production of a will before probate is a mere formality and a matter of no legal consequence whatever until probate. It is not a correct assumption to assume that the production in this court of an executed will in writing is of no legal consequence before the will is subjected to judicial scrutiny and final judgment.

The idea that such a will is in the first instance dependent for its validity only on the subsequent action of courts of probate, or the chance verdicts of common juries, now allowed therein, is not correct. Such a conception belittles the inherent effect of the most solemn instrument of conveyance known to the law. This too-common idea gives rise in this country, I think, to many speculative suits to annul the effect of testators' wishes, and this is not consonant with the remarkable affection for law and order which the people of this country in other respects exhibit in a greater degree than the people of other countries. The result of this aberration is that in this country, and in this state in particular, " will cases," so called, are far more common than in other great countries.

At common law a will did not depend on probate for its validity, and before probate there were certain presumptions, such as of *animus testandi*, which flowed from the mere production of the will of a testator. Unfortunately a presumption of *animus testandi* is, as

I pointed out in a recent case (*Matter of Paez,* 107 Misc. Rep. 586), now postponed in this state until after proof of the statutory requirements. *Matter of Foley,* 76 Misc. Rep. 171; *Matter of Gedney,* 142 N. Y. Supp. 161. That is to say, it is postponed if the will is a mere testament, or, in other words, when it purports to convey personal estate alone. It is still to some extent, as at common law, otherwise when the will is a conveyance of realty. No probate is necessary for a will of real estate, except *sub modo* as to certain subsequent purchasers of the realty, without notice of the will. *Matter of Connell,* 75 Misc. Rep. 577.

Even if a will is of personalty only, the titles of the executors flow from the will, and not from the probate, as I have often pointed out not only in *Matter of Kennedy,* 106 Misc. Rep. 219, and in *Matter of Ripley,* 101 id. 468, but in many other adjudications. It is for this reason, among many others, that I have been always opposed to a practice of appointing other than executors nominated in the will the custodians of estates of the dead *pendente lite.* The executors chosen by a dead person himself should always be preferred for receivers *pendente lite* in probate cases, unless there is some overwhelming necessity to look elsewhere.

But it is contended by eminent and very learned counsel, Mr. Griggs, who appeared for the widow of testator, that the court is without power to vacate its prior designation of Mrs. Shonts, even though such designation was based on a wrong assumption by the court that there was no will, and it is also claimed that such *vacatur* may be made only on a petition and citation. Code Civ. Pro. § 2569. Had Mrs. Shonts received letters on her application this might possibly be so, but she has not received letters. I do not say that it is so, even if she had received letters, for there are other sections to the Code to be considered, notably

subdivision 6 of section 2490 of the Code of Civil Procedure. And see *Matter of Smith,* 65 Misc. Rep. 417.

The jurisdiction and procedure of this court in proceedings not based on a will are quite distinct from its jurisdiction and procedure where a will is produced and offered for probate. To affirm that the court must proceed in a course of administration, based on intestacy, even after a will is produced in this court, would be to affirm an anomaly in courts of this character. On the contrary, its jurisdiction, if based on alleged intestacy, ceases when the matter becomes apparently one of testacy. When a will appears the court is bound of its own motion to stay the proceeding based on such wrong assumption until the allegation of testacy is regularly disposed of in the prescribed course of judicial procedure.

In consequence of the production of a will in this court I am bound, of my own motion, to revoke the designation of Mrs. Shonts allowed in the course of administration, and I so do. Any court of record has the power to recall its mere designation when a process or procedure to appoint is not completed.

It is quite true that it is often said, as in this case, that the powers of this court are strictly statutory. But this is true only in part, and it is equally true of all American courts. There are no courts in this country possessed of a jurisdiction by virtue of the common law alone, except it be some old courts of the public market called *" pie poudre "* courts. These once existed here for a time. The jurisdiction of all American courts is defined in some organic act transferring an older jurisdiction. The transfer of the jurisdiction necessarily carries with it the judicial powers incident to the jurisdiction unless restrained. What is generally meant by the contention in question is that where a statute directs a court of this character to pro-

ceed in one way, it may proceed in no other. But the Practice Act of this court (Code Civ. Pro. chap. 18) does not pretend to provide for all cases, and it is doubtful if it provides for the precise state of facts I have mentioned above. That I have an inherent power to recall my designation of Mrs. Shonts as temporary administratrix or to stay her proceeding as such I make no doubt, for the cause has now become one in a course of testacy, thus superseding all former steps on this estate.

Let me remark at this point that the present Revised Practice Act for this court (Code Civ. Pro. chap. 18) has become inadequate for the largely extended modern jurisdiction now invested in this court. The court is now invested by recent laws with much equitable jurisdiction formerly exercised by the chancellors of this state, and with much legal jurisdiction formerly exercised by our old courts of law. The grant of such additional powers to this court *ipso facto* carries with them the judicial powers ordinarily invested in those who formerly exercised the jurisdictions. To grant such additional jurisdiction and then to continue to insist that the court is circumscribed by an old Practice Act, intended for a different and more confined jurisdiction, or to insist that the old act continues to govern exclusively the new jurisdiction conferred, would be to embarrass litigants in many cases. If the legislature intended that result, which I do not contemplate, they are in the position of one who having builded a great and stately house in an old field leaves as the only approach to it the poor path which formerly led to a demolished hut, superseded by the new structure. But by these last remarks I refer largely to the newly extended jurisdiction of this court when it sits in the newly transferred courses of equity and law, and not to our probate jurisdiction, which is very

Surrogate's Court, New York County, November, 1919. [Vol. 109.

ancient, and may well be limited in its exercise, as was intended doubtless by the old Practice Act. But even under the old act, as revised, I have power to annul, as I said, my mere designation in an order of Mrs. Shonts, mistakenly made in the course of the procedure relative to intestacy, and I am so bound to do. This is also the course universally adopted in the probate courts of other common-law countries. Such a course is the only one consonant with reason and the orderly administration of justice.

We come, then, next to the application for the appointment of temporary administrators in the proceeding for probate. It is argued that the claims of the widow are superior to the claims of one not a widow. This is of course a fundamentally correct proposition in law and in fact; but the one not a widow is making no claim to be appointed temporary administratrix. The claim is by an executor named in the will. I cannot weigh, at this stage of the contest, the equitable or moral rights of any one named in the will as legatee or devisee. It is quite unnecessary for any present purpose so to do, and the law wisely precludes it.

On an application in a contested probate proceeding for the appointment of receivers, now designated in this court "temporary administrators," the court is not at liberty to look at the particular provisions of the will propounded. The power of courts to inspect all documents — wills included — is, contrary to popular notions, a very limited one. Surrogates are not at liberty to rummage at their pleasure through the contents of wills propounded for probate. It is only on the actual trial of a contested probate and after evidence given that the surrogate may look at particular provisions of the alleged will offered for probate, and then only when it is claimed that such provisions on their face bear evidence of mental incompetency of the tes-

Misc.]    Surrogate's Court, New York County, November, 1919.

tator, or where fraud is charged and the will bears evidence of that charge. A charge of fraud or duress concerning a document proceeded on always brings that writing in evidence on the trial of the issues, and then it is regularly before the court, but not before trial.

Of course, in a case for construction of a will, which this is not, the instrument to be construed is brought into court for that purpose, and it is then regularly before the court. So on an application before probate to expunge matter in a will alleged to be too scandalous to be recorded, the surrogate may look into the will after proof of the will to determine the matter proper for recording. As a probate proceeding is one in *rem* and the *res* is actually brought into court and proceeded on, the power of the surrogate to look at the writing produced is perhaps somewhat greater than it is in other tribunals of a purely legal or equitable nature. But the instances noted are about all the occasions I now recall off-hand when the surrogate may consider at large the contents of wills produced in this court for probate. At this time this case falls within none of the rules stated, and the court will not on this application look at the contents of the will of Mr. Shonts further than I indicate in this opinion.

Argument is advanced, in substance, that a certain legacy or devise in the will is not legal or proper. The surrogate at this stage of the will contest cannot, as stated, pass on the legality of particular provisions of Mr. Shonts' will. The instrument must be proved before such an investigation as that can be undertaken by the surrogate.

Nor can the surrogate at any stage of the probate proceeding pass upon mere ethical claims of those contestants who allege impropriety in certain provisions

Surrogate's Court, New York County, November, 1919. [Vol. 109.

of the will. The surrogate is not *censor morum*. The propriety of particular devises, legacies or bequests is never for the surrogate. Their legality only may be brought before him on or after a trial, not before.

At this stage of this probate proceeding but just begun the court can see only that an instrument in writing, apparently on its face executed in conformity with the Statute of Wills, is propounded for probate; that a contest over it has arisen, and that pending the trial the appointment of receivers, *aliter* "temporary administrators," is asked. For such purpose the surrogate may ascertain who are the executors named in the will, and he is even at liberty to read their names at this stage of the proceeding, for the purpose of taking cognizance of their persons on the application for the appointment of receivers. Further than that he may not go.

While the court must shut its eyes to particular provisions of the propounded paper at this state of the contest, it is not so blind that it cannot see what all the rest of the world is permitted to see. It cannot ignore, for example, charges placed before it on argument. In regard to these charges, I may be allowed to point out, however, that the argument made from them is not sound. A bequest or devise of residuary to a friend of the testator, not of his family, is not of itself evidence of anything except a bequest. The court cannot assume its illegality, much less its impropriety. Circumstances may be shown on the trial which will justify both the legality and the propriety of the legacy. I cannot now know what will be proved on the trial. The gift of the residue may be, and probably is, a very trifling sum, and in that event the alleged impropriety ceases. If it shall appear that the main estate, which is not by modern standards large, passes or has passed to testator's own family and only a trifle to one not of his

family, the situation bruited about out of doors by *quid nuncs* will be quite changed. Even if the bequest of the residuary prove considerable the legal situation will not be altered, if the testator was of sound mind and competent to make a will, and there was no over-reaching or fraud practiced on him. The law at last is always kind in its assumptions raised before trial of issues of fact; it cannot assume, what irresponsible laymen too often assume, impropriety in legacies which may, in due course, be reconciled with propriety.

I am not apologizing and am not obligated to apologize for particular provisions of this or any will offered for probate. All kinds of people make wills; the modern, untutored and aggressive type of people of affairs, often so offensive to the old-fashioned monogamous traditions of this country, may make wills as freely as great gentlemen of better traditions, habits and training. The law does not confine the power of making wills to those possessed of a good sense of propriety. The surrogate cannot undertake, and indeed, is prohibited from considering, the mere propriety of legacies. Every kind of citizen has and may have his own notions of the amenities of life and he may express them in his will, for if of sound and disposing mind he may by the law of the land do what and how he likes with his own, subject to certain rules of law, regarding perpetuities and future estates, not necessary to mention here.

It has been my uniform practice, while here, to nominate for temporary administrators (who are really the receivers of this court) in all contested probates the executors named in the will, and if this is not possible, I name a trust company. It is my firm belief that the appointment of the executors named in a will as temporary administrators during contested probates is not only more economical for suitors and estates in ninety-

Surrogate's Court, New York County, November, 1919.    [Vol. 109.

nine cases out of a hundred, but more consonant with the dignity of a court of this character. The intrusion of nominees of the court, strangers to the dead, very distasteful to the inhabitants of this state, should be as rare as possible in this court if people of property are to continue to feel at ease and in security in this state.

The only cases where the nominated executors cannot be so appointed receivers *pendente lite,* are, I think, where the executor is shown to have drafted the disputed will and takes a benefit therefrom, or where he is shown to be a person of doubtful solvency or character, or where he is charged under oath with undue influence or with fraud in the procurement of the will itself. In such cases it has been my reluctant practice, even when the executors were of the highest repute, and when I believed the charges under oath likely to prove unfounded, to name a trust company as temporary administrator or, in other words, receiver *pendente lite.* In most contested probates the executor has no interest and nothing to do with the creation of the will, and in such cases should always be appointed temporary administrator, as then, in the event of ultimate probate (which most always results) double fees and charges are saved for the estate.

The will of Mr. Shonts, I observe, names two gentlemen as his executors and a trust company in good standing. The two gentlemen named virtually renounce. There is not any good and sufficient reason advanced why the other executor, the trust company, a solvent state corporation, should not be named temporary administrator in conformity with my usual practice. The argument, so courteously and firmly advanced by Mr. Griggs, the learned counsel for Mrs. Shonts, that the temporary administrator should be a stranger, is an argument which, if pressed to extremes,

would always be an excuse for excluding executors named in a will. If such exclusion were to become the universal practice in this state, I know that if I were a very rich father of a family living here, and regardful of my succession, I should immediately choose a state for a domicile where that practice was not allowed to prevail.

It is in the interest of all concerned that the trust company named as executor in Mr. Shonts' will should be named as temporary administrator pending the contested probate proceeding, and it is so named.

Decreed accordingly.